**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
Ft. Wayne Division

| | |
|---|---|
| CLAUDETTE JORDAN,<br>    *Plaintiff*, | )<br>)<br>) |
| v. | ) **Cause No.**<br>) |
| M&T BANK CORPORATION,<br>    *Defendant*. | )<br>)<br>) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Claudette Jordan ("Plaintiff"), by counsel, complains of Defendant M&T Bank Corporation ("Defendant"), as follows:

### INTRODUCTION

1. This action arises out of Defendant's violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

2. Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

3. The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

4. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the

1

FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

5. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

6. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

7. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness, but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

8. The FCRA imposes duties on providers of credit information ("Furnishers") to credit reporting agencies. Specifically, the statute requires Furnishers to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)

9. Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).

10. Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit

information, bear "grave responsibilities." *Cushman v. TransUnion*, 115 F.3d 220, 225 (3d Cir. 1997).

11. On December 4, 2003, President George W. Bush modified the FCRA by signing into law the Fair and Accurate Credit Transactions Act ("FACTA").

> This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers have the ability to better protect themselves and their families.[1]

12. The stated purpose of FACTA is "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes." [2]

13. Towards this end, said tools include the right to dispute information due to fraud, obtain free credit reports due to identity theft, and the right to request the truncation of Social Security numbers on consumer disclosures (commonly referred to as credit reports).

## JURISDICTION

14. Jurisdiction of this Court is proper pursuant to 15 U.S.C. § 1681 and 28 U.S.C. § 1331.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct in question occurred in this District, Plaintiff resides in this District, and Defendant transacts substantial business in this District.

## PARTIES

16. Plaintiff is a natural person who resides in the city of Fort Wayne, county of Allen, state of Indiana, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

---

[1] http://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html (Last visited on May 14, 2020)

[2] Pub. L. No. 108-159 (2003) http://www.gpo.gov/fdsys/pkg/PLAW-108publ159/pdf/PLAW-108publ159.pdf (Last visited on May 14, 2020)

3

17. Defendant, is a bank that is licensed to do business in the State of Indiana and regularly conducts business in said State. Defendant has a principal place of business located at One M&T Plaza, 8th Floor, 345 Main Street, Buffalo, NY 14203. Defendant is a "person" as defined in 15 U.S.C. § 1681a(b) and a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

**FACTUAL ALLEGATIONS**

18. Sometime in or about March 2017, Plaintiff co-signed on an automobile loan with Kade Kinnaley ("Mr. Kinnaley"), through Defendant, for a 2011 Dodge Charger ("Vehicle 1"), with account number 1000015324881 ("Loan #1").

19. Plaintiff and Mr. Kinnaley defaulted on Loan #1.

20. Sometime in or about November of 2018, Mr. Kinnaley allowed Vehicle 1 to get repossessed.

21. There was an outstanding amount on Loan #1 after the voluntary repossession and then even after the Dodge Charger was sold at auction.

22. The remaining balance was approximately $15,710.00.

23. In May 2019, Mr. Kinnaley used Plaintiff's personal identifying information and obtained a second loan with Defendant to pay off the deficiency balance in the amount of $16,438.00. ("Loan #2").

24. Loan #2 was unsecured and bore account number 1000015718199****.

25. Plaintiff was unaware of Loan #2.

26. Plaintiff at no time gave Mr. Kinnaley permission to use her personal identifying information or sign on her behalf to obtain Loan #2.

27. Plaintiff never signed any documents related to Loan #2.

28. Plaintiff was told by Mr. Kinnaley that he had paid off Loan #1.

4

29. Plaintiff then began reviewing her credit reports and saw that Loan #2 was appearing on her credit reports.

30. Plaintiff immediately contacted Defendant and reported Loan #2 as fraud.

31. Defendant refused to give Plaintiff any information regarding Loan #2 because she could not pass the security questions related to account number (because she did not have it) and the address was not known to her.

32. Plaintiff also filed a police report with the Fort Wayne Police Department, Incident # 21F096988 on September 7, 2021, and an Identity Theft report with the Federal Trade Commission.

33. On or about September 7, 2021, Plaintiff mailed letters to the credit reporting agencies and disputed the fraudulent Defendant account (#1000015718199****) pursuant to 15 U.S.C. §1681i.

34. Thereafter the credit reporting agencies, specifically Trans Union, forwarded Plaintiff's dispute information to Defendant for investigation as required by 15 U.S.C. § 1681(a)(2).

35. Trans Union sent an ACDV to Defendant regarding account number 1000015718199****.

36. Defendant verified to Trans Union that account number 1000015718199**** belonged to Plaintiff and was accurately reporting on her credit report, in violation of 15 U.S.C. § 1681s-2(b). Defendant's reporting adversely and/or negatively affected Plaintiff's credit profile and again failed to update the tradeline as "disputed" when Defendant was aware that Plaintiff's dispute was legitimate.

37. Defendant violated 15 U.S.C. §1681s-2(b) when it received the notification of disputes from the credit reporting agencies, including the police report detailing out the fraud /

5

identity theft concerning the Plaintiff's disputed account and failed to conduct a reasonable investigation and failed to delete the fraudulently opened account that did not belong to Plaintiff and failed to update the reporting to show that the account was "disputed".

38.  As a result of Defendant's inaccurate and malicious reporting to the credit reporting agencies that Plaintiff's fraudulent account was charged off in the amount of $16,438 and that she refused to make payments for several months, Plaintiff has suffered reduced credit, emotional distress, embarrassment, frustration, distraction from work, loss of sleep, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

39.  The credit reporting agencies, Equifax and Experian, both deleted the Defendant's tradeline from their credit files upon receipt of Plaintiff's dispute and police report information.

40.  Plaintiff is entitled to attorney's fees and costs from Defendant pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

41.  Defendant's false and negative credit reporting has caused Plaintiff's credit score to go down considerably.

42.  Plaintiff takes great care in working and guarding her credit report/score and is now embarrassed and humiliated that her score is not perfect as it should be without the Defendant's adverse account.

43.  Defendant's conduct has caused Plaintiff to be delaying credit opportunities and she will not obtain the best possible rates until the Defendant's adverse and harmful reporting is removed from her credit profile.

## TRIAL BY JURY

44.  Plaintiff is entitled to, and hereby demands, a trial by jury.  US Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I: VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *et seq.*

45. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

46. Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it and documentation provided by Plaintiff, and failing to update and/or remove the inaccurate tradeline or, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Codes) Code to "XB."

47. As a result of Defendant's violations of the FCRA, Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to her credit rating, emotional distress, embarrassment, mental anguish, anxiety, and humiliation in an amount to be determined at trial.

48. Defendant's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.4

49. Alternatively, Defendant's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

50. Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the entry of judgment in her favor and against Defendant for the following:

7

A. For actual damages, including interest, plus all costs and reasonable attorney fees against Defendant in relation to the violations set forth in Counts I;

B. For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant for each and every violation contained in Count I;

C. For punitive damages against Defendant for the violations set forth in Count I;

D. For all other relief deemed just and proper.

Dated this 12th day of August 2022.

Respectfully submitted,

*/s/ Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**CLARK QUINN MOSES SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
Fax: (317) 687-2344
tcohron@clarkquinnlaw.com

/s/ Thomas J. Lyons, Jr.
Thomas J. Lyons, Jr., Esq.
MN Attorney I.D. #: 249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:   (651) 704-0907
tommy@consumerjusticecenter.com
(*To Be Admitted Pro Hac Vice*)

***Counsel for Plaintiff***